BETTIE G. CLARK ET AL. *v.* GEORGE RAINEY ET AL.      72     151
                                                      90     766

1. BONA FIDE PURCHASER. *Secret trust. Notice.*

A *bona fide* purchaser of land from one in whom the record shows the title to be, will prevail as against another having an undisclosed trust.

2. TAX TITLE. *Tenant in common. Disability. Record. Notice.*

Where the record shows that two persons own land as tenants in common, a purchaser from one, though receiving a conveyance of the entire interest, becomes a cotenant with the other owner, charged with notice of his rights; and the acquirement by such purchaser of a tax title to the land operates as a redemption. *Jones* v. *Merrill,* 69 Miss., 747.

3. SAME. *Wife of cotenant. Disability to purchase.*

The wife of one tenant in common is under disability to acquire a tax title to the common property. A purchase thereof by her at a tax sale operates as a redemption. *Robinson* v. *Lewis,* 68 Miss., 69.

FROM the chancery court of Sunflower county.

HON. W. R. TRIGG, Chancellor.

Bill by the heirs of one Greer to establish title to an undivided one-half interest in section 28, and the northwest one-quarter of section 27, township 19, range 4, west, in Sunflower county, and to cancel certain tax deeds and other conveyances as clouds upon their title. The land was originally owned by T. H. Kennedy and A. J. Arrington. Bogle and Greer were partners as commission merchants, in Mobile, Ala. On October 15, 1864, Bogle contracted to purchase the land from Arrington for himself and Greer, and gave their due bill, payable January 1, 1865. In November, 1865, Bogle took a conveyance to himself alone, from Kennedy, of an undivided one-half interest in the land. In September, 1866, he took a conveyance to Greer and himself from Arrington for an undi-

vided one-half interest. In 1867 all the land was sold to the state for taxes. In 1871 Bogle purchased the land from the state, taking the title to himself as to section 28, and, as to the northwest quarter of section 27, taking the title in his wife, L. A. Bogle. The deeds from Arrington and Kennedy were not recorded until 1867, after Greer's death, which occurred that year. They were put on record by Bogle, who seems to have had possession of the papers all the time. In November, 1881, Bogle and wife conveyed the south half of section 28 to defendants, White and Collins. He also executed a trust-deed on the south half of the northeast quarter of section 28 to one Patty, who afterwards became the purchaser under this trust-deed. Bogle and wife also executed a trust-deed on the northwest quarter of section 28, under which it was sold to defendants, Lake and Marshall, and they conveyed to M. E. Farish. In 1881 the land purchased by White and Collins was sold for taxes, J. H. Baker becoming the purchaser. On March 11, 1882, he conveyed the same to White and Collins. The land bought by Lake and Marshall was sold to 'the state for taxes, March 7, 1881, and in March, 1882, Lake purchased the same from the state.

There was evidence on behalf of complainants tending to show that Greer paid the entire purchase money for the land, and that Bogle was insolvent. On final hearing the bill was dismissed as to the land claimed by Collins, White, Farish and Lake, all other matters being reserved for future determination. From this decree complainants appeal. The opinion contains such further statement of the facts as is necessary to an understanding of the questions decided.

*Nugent & McWillie* and *A. G. Paxton*, for appellants.

Appellants are not claiming as creditors or subsequent purchasers of Bogle's grantor, and the record of the state's conveyance to him does not affect them. *Valley Co.* v. *Railroad Co.*, 58 Miss., 846.

The sale for taxes contained no element of estoppel and conferred no right upon Bogle. His conveyance to the defendants, White and Collins, only passed such right as he had. The deed to Bogle and Greer conjointly admonished all parties of the latter's interest, and that Bogle, as a tenant in common, could not acquire a valid tax title. Therefore, appellants are not barred by any statute of limitations. The possession of their cotenant was their possession, and his purchase of an outstanding tax title inured to their benefit as a redemption. Limitations in favor of tax titles do not apply where the purchaser, because of his relation to the property, is incapacitated to buy. *Allen* v. *Pool*, 54 Miss., 323; *McGee* v. *Holmes*, 63 *Ib.*, 50; *Fox* v. *Coon*, 64 *Ib.*, 465; *Jones* v. *Merrill*, 69 *Ib.*, 747.

The wife of a tenant in common cannot acquire a tax title to the common property as against a cotenant. *Robinson* v. *Lewis*, 68 Miss., 69.

As to the tax title attempted to be acquired by Mrs. Bogle and the subsequent tax sales, purchasers stand in the same position as that of Bogle.

*Critz & Beckett*, for appellees, White and Collins.

1. The record shows that Bogle had three-fourths interest in the lands purchased by Greer and himself. Whether he or Greer paid the purchase money is wholly immaterial to White and Collins, because they are innocent purchasers under him, and are entitled to whatever the record showed in his favor. They bought solely upon the faith of his tax deed, and without any knowledge of the deeds from Arrington and Kennedy.

2. The tax sale to Smith was valid, and this was acquired by the defendant, Collins.

3. In 1881 the south half of section 28 was sold to J. H. Baker for taxes. This was prior to the purchase by White and Collins from Bogle; and in 1882, after the period of redemption had elapsed, Baker conveyed to White and Collins. The regularity of these tax sales is not questioned.

4. The burden of proof is on the appellants, as to the plea of infancy, and the chancellor found as a fact that W. G. Greer, the youngest of the parties, was over twenty-two years of age when this suit was commenced. They were therefore all barred, unless the court denies to White and Collins the right to plead the tax title. White and Collins did not buy as tenants in common, and did not know that anyone claimed to be tenants in common with them. They bought the whole estate, and were under no obligation to pay the back taxes or to redeem. After paying for the land, they found that J. H. Baker had a paramount tax title, and, to protect themselves, bought it in, as they had a right to do. They were not in possession of the lands, and had no control when the tax sale was made.

In *Allen* v. *Pool*, 54 Miss., 323, this court simply announced the general rule that a tenant in common cannot acquire a tax title as against his cotenant. In that case, the taxes had accrued during the tenancy in common. The same principle is announced in *Harrison* v. *Harrison*, 56 Miss., 174. In *McGee* v. *Holmes*, 63 Miss., 50, it was held that Tyson, who had gone into possession of the land, could not purchase at a tax sale thereafter made, he being under obligation to pay the taxes. In *Fox* v. *Coon*, 64 Miss., 465, a life tenant in possession allowed the land to be sold for taxes and purchased the same. It was held, in favor of the remainderman, that this was simply a redemption. The same principle was announced in *Jones* v. *Merrill*, 69 Miss., 747. These cases are not applicable here, because when the land was sold for taxes White and Collins were not under obligation to pay the taxes. They stand in a different attitude from Bogle, who, being a tenant in common when the taxes accrued, could not acquire an adverse title at a sale therefor. Baker acquired a good title, and White and Collins purchased from him. He was not under obligation to pay the taxes, nor were they.

5. If the court allows appellants to redeem from the Baker tax sale, the amount expended by White and Collins for taxes and improvements must be made a charge upon the land.

WHITFIELD, J., delivered the opinion of the court.

So far as the issues between appellants and Mrs. McLin and A. E. Anderson, Jr., and R. C. Patty are concerned, we have, in this appeal, nothing before us, as the final decree very singularly pretermits any decision as to them, and the lands to which they assert claims, disposing of the rights of the other appellees by dismissing the bill as to these other appellees, apparently solely on the finding of the chancellor that W. G. Greer was over twenty-two years of age when the bill was filed, August 23, 1889.

We do not think the testimony shows satisfactorily any resulting trust in Greer to the half interest in the land in the Arrington deed, which, on the face of that recorded deed, was in Bogle. The due-bill for $6,000, in Confederate treasury notes, was due January 1, 1865, and, apparently, paid then, but was made in October, 1864, when the contract of sale was made, and the deed was made September 5, 1866. It is not shown whether the due-bill was payable to Arrington and Kennedy jointly, or how. The testimony lacks clearness and definiteness. The purchase money was manifestly not paid at the time of the contract of purchase, and, if Greer furnished all the money, the due-bill was jointly made by Bogle and Greer, and indicates, so far as it speaks, a joint purchase. It is sufficient to say that, as to this land, the proof fails to show, satisfactorily and clearly, any resulting trust.

So far as the land in the Kennedy deed is concerned, the circumstances, independently of the testimony of Mr. and Mrs. Thomas, very strongly suggest that there was in Greer a trust in this land to the extent of an undivided half interest. Bogle wrote Greer that the trade was for "all of section 28, and northwest quarter of section 27," refers to it as the "Heathman land," and says Kennedy was present when he was writing, describing the land to him as an elegant tract. Bogle made this trade, "acting for himself and Greer," in the language of the bill, and as shown by his letter in October, 1864.

He took the Kennedy deed to himself alone, nevertheless, in November, 1865, nearly a year before he took the Arrington deed to himself and Greer jointly, kept the deeds in his possession till May 11, 1868, some months after Greer's death, in September, 1867, and on that day put both to record at the same time.  He had manifestly been intrusted by Greer with the making and consummation of these contracts respecting all this land.  But, granting this, the evidence shows White, Collins, Mrs. Farish, and Lake to be innocent purchasers for value, without notice, of whatever interest Bogle was shown to have by the record; and hence the trust avails nothing.

But, on the record, Greer was tenant in common with Bogle in the lands in Arrington's deed, owning one undivided fourth interest in fee therein.  Being a tenant in common with Greer, Bogle's attempted purchase from the auditor March 24, 1871, taking title to himself to the whole of section 28, operated a redemption.  *Jones* v. *Merrill*, 69 Miss., 747; *McGee* v. *Holmes*, 63 *Ib.*, 50; *Allen* v. *Pool*, 54 *Ib.*, 323; *Fox* v. *Coon*, 64 *Ib.*, 465.

And Mrs. Bogle's attempted purchase from the auditor, at the same time, of the title to the northwest one-fourth of section 27 also operated merely a redemption.  *Robinson* v. *Lewis*, 68 Miss., 69.  And as White, Collins, Lake and Mrs. Farish all hold and deraign title under Bogle, they stand clothed also with the disability attaching to a tenant in common of buying in the tax title, and setting it up adversely to their tenant in common, Greer, or his heirs, these appellants.

Bogle and wife made their deed to White and Collins November 28, 1881, and they went into possession confessedly before the expiration of the year allowed for redemption against Baker's tax title, Baker having bought at tax sale March 7, 1881, and having conveyed to White and Collins March 11, 1882. It will thus be seen that White and Collins, after having been constituted, by their deed from Bogle and wife, November 28, 1881, tenants in common with appellants, and the duties and

obligations arising from their character as such tenants in common thus fixed by said deed, and after having taken possession of said lands under said deed, as tenants in common, bought from Baker, on March 11, 1882, his tax title. It is clear that such purchase operated also merely a redemption. *Jones* v. *Merrill*, 69 Miss., 747, and authorities *supra.*

It follows that the complainants have a clear and perfect title to one undivided fourth interest in fee simple to the south one-half of section 28, and the northwest one-fourth of section 28, township 19, range 4 west, in Sunflower county, Mississippi—the lands now before us.

The various statutes of limitations have no application as to this interest in these lands thus held under Bogle, the original cotenant with Greer. These parties are all bound by the deed of Arrington, which, being of record, charged them with notice of Greer's interest.

The deeds of the auditor to Bogle and wife, of March 24, 1871, conveying these lands; the deed of Bogle and wife, of November 28, 1881, to White and Collins, conveying south half of section 28 aforesaid; the deed of Baker, of March 11, 1882, to White and Collins, and the deed to Baker, of March 7, 1881; the deed in trust from L. A. and J. C. Bogle to Jno. W. Brady, trustee, of date September 6, 1877; the deed from Tarry, substituted trustee, to Lake and Marshall, of date August 16, 1880; the deed from Marshall to Lake, of date January 20, 1882; the deed from S. Gwin, auditor, to Lake and Marshall, of date March 8, 1882, and the deed from T. H. Lake to M. E. Farish, of date December 15, 1888, all set out in the record, are hereby canceled and annulled, so far as they affect the appellant's one-fourth interest in said lands.

The finding of the chancellor that W. G. Greer was, at the filing of the bill, over twenty-two years of age, is manifestly erroneous. The testimony of Bettie Greer and of her mother, Mrs. Thomas, speaking with the "record of births" in the family Bible before her, indisputably show that W. G.

Greer was born October 23, 1867, and she was, hence, not barred by the one year's statute provided by §§ 531, 572, code 1880. W. G. Greer is, therefore, clearly entitled to one undivided one-twelfth interest in fee in north one-half of northeast one-fourth of section 28, attempted to be conveyed by A. B. Smith to T. H. Collins by deed of date February 24, 1886, said land having been sold to the state on March 7, 1881, and bought from the state by said Smith, September 11, 1885. W. G. Greer is entitled to redeem her one-twelfth interest in said lands, and the said deeds just enumerated, to the state March 7, 1881, and from the state to A. B. Smith, of September 11, 1885, and Smith's deed to Collins, of date February 24, 1886, are hereby canceled and annulled so far as they affect W. G. Greer's undivided one-twelfth interest in said land.

The bill prays for discovery and an account. The court below will have an account stated between appellants and appellees, on full proof, not being bound by the exaggerated estimates attached to the answers of White and Collins as exhibits. The substantial rights of complainants are to be secured, as well as of respondents; and the fact that complainants called for discovery must be taken in connection with the fact that an accounting was called for, but has not been had. Complainants are not, in the attitude of this case, bound by the discovery, imperfectly and insufficiently made, and the exhibits in which it is contained.

The court below will carefully distinguish, in stating the account, between the rights of all the complainants to the one-fourth of south one-half of section 28, and northwest one-fourth of said section, and of W. G. Greer's one-twelfth interest in north one-half of northeast one-fourth of section 28. As to the former, the three complainants are simply bound to return the sums paid for taxes, with six per cent. interest. Their one-fourth interest stands redeemed by the sales referred to. They will also be chargeable with the real value, as shown on full proof, of such improvements as are permanent, and are entitled to one-fourth

of all rents of said lands.    W. G. Greer, on the contrary, comes to redeem the said one-twelfth interest, under the terms prescribed in § 531, code 1880.

We will only add that the court below may, if the lands can be so divided as to give complainants their one-fourth in unimproved lands, if it deems it most consonant with equity, allow complainants to take their one-fourth in such unimproved lands, so as not to be improved out of their estate.

*Decree reversed, and decree here accordingly as indicated, and cause remanded for an accounting on the principles indicated.*